## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IOU CENTRAL, INC.                           Case No. 1:19-CV-4427
d/b/a IOU FINANCIAL, INC.,

     Plaintiff,

v.

EMBRYOLISSE USA, INC n/k/a
ZOBEAUTY, INC.,
TIMOTHY M. KOST,
MICHELLE SHAFFER-KOST,
RICHARD J. MCINTYRE,
MCINTYRE, THANASIDES,
BRINGGOLD, ELLIOTT, GRIMALDI,
GUITO & MATTHEWS, P.A.

     Defendants.

_____/

## MCINTYRE DEFENDANTS' BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

### I.    INTRODUCTION

Plaintiff seeks to force a Florida law firm and attorney into litigating in
Georgia for alleged actions supposedly taken <u>entirely</u> within the state of Florida,
during the representation of Florida clients. Plaintiff fails to allege any relationship
between the state of Georgia its and its claims. Pursuant to the Constitution and
controlling Supreme Court and Eleventh Circuit law, this action should be dismissed
for lack of personal jurisdiction and improper venue.

1

## II.    STATEMENT OF THE CASE[1]

Defendant McIntyre, Thanasides, *et al*., P.A. ("McIntyre Firm") is a Florida law firm with three Florida offices. Doc. 36-1, ¶2; Aff. P. Thanasides, ¶4 (July 1, 2020) (attached as **Exhibit A**). Defendant Richard McIntyre ("Mr. McIntyre") is an attorney at McIntyre Firm and a Florida resident. Ex. A, ¶5. (McIntyre Firm and Mr. McIntyre are hereinafter referred to collectively as "McIntyre").

Defendant Embryolisse USA, Inc. ("EUSA") is a Florida corporation with its principal place of business in Florida. Doc. 36-1, ¶3. EUSA's principals, Defendants Timothy Kost and Michelle Shaffer-Kost (the "Kosts"),[2] are residents of the state of Florida. Doc. 36-1, ¶9.

Plaintiff, IOU Central, Inc. ("IOU"), is a Delaware corporation with its principal place of business in Georgia. Doc. 36-1, ¶1. On 7/25/18, IOU loaned money to EUSA (the "Loan"). Doc. 36-1, ¶13. The Loan was guaranteed by the Kosts. Doc. 36-1, ¶15.

EUSA was a distributor for Laboratoires Embryolisse, a French cosmetics company. Laboratoires Embryolisse informed EUSA in October 2018 that EUSA would no longer have license to distribute Embryolisse products or use the

---

[1] The factual statements supported by citations to the complaint are allegations of Plaintiff and are not admitted.

[2] While IOU's Second Amended Complaint removed the Kosts from the caption, IOU maintained its breach of contract claim against the Kosts.

Embryolisse mark after January 1, 2019. Ex. A, ¶8, Ex.1. EUSA then retained McIntyre. Ex. A, ¶6. McIntyre did not know or have any relationship with EUSA or the Kosts until October 2018. Ex. A, ¶12-13. McIntyre has not provided legal services to EUSA or the Kosts outside the state of Florida. Ex. A, ¶16.

EUSA defaulted on Loan payments on 11/2/18. Doc. 36-1, ¶26. On 11/6/18, IOU contacted McIntyre regarding EUSA's default. Doc. 36-1, ¶31-32. On 11/27/18, IOU again contacted McIntyre. Doc. 36-1, at ¶34-35.

On or around 11/29/18, IOU retained a third-party collection agency, Altus Global Trade Solutions ("Altus"), to enforce the Loan. Ex. A, ¶25. Over the next few months, Altus contacted EUSA, the Kosts, and McIntyre Firm multiple times to collect the debt. Ex. A, ¶25-26, 38-31, Exs.2-4.

In July and September 2019, creditors of EUSA and the Kosts brought two separate actions in Hillsborough County, Florida, for defaults under their respective loan agreements. Doc. 36-1, ¶39, 42 ("Florida Circuit Court Cases"). McIntyre Firm received a $300 flat fee for defending EUSA and the Kosts in each case, totaling $600. Ex. A, ¶33-34.

In November 2019, McIntyre Firm filed a petition for bankruptcy on behalf of the Kosts in the Middle District of Florida, Case No. 8:19-bk-10678-CPM ("Kost

Bankruptcy").[3] Doc. 16. McIntyre Firm received a $2,000 flat fee for its services in connection with the Kost Bankruptcy. Ex. A, ¶35.

The Kosts were granted a discharge on March 24, 2020. Kost BK, Dkt. 31. IOU did not seek relief from the automatic stay, file a proof of claim, file an adversary proceeding, contest the Kosts' insolvency, object to the discharge, or otherwise participate in the Kost Bankruptcy. Kost BK, Dkt. *passim*.

IOU now seeks to hold McIntyre liable for its clients' debt, which was incurred prior to McIntyre's representation. Doc. 36-1, ¶53.

## III.   SUMMARY OF THE ARGUMENT

IOU's Second Amended Complaint is its third shotgun attempt to spin a simple loan default into an elaborate, preposterous conspiracy so it can collect nuisance payments from solvent third parties. This case must be dismissed for lack of personal jurisdiction and improper venue. All the alleged actions or omissions giving rise to IOU's claims against McIntyre occurred in Florida, where McIntyre resides.

IOU's allegations against McIntyre are conclusory, incongruous, unsupported by well-pleaded facts. IOU fails to separate into a different count each cause of action, and asserts multiple claims against multiple defendants without specifying which defendant is responsible for which act. Counts III and IV fail to state a viable

---

[3] Filings from the Kost Bankruptcy are cited herein as "Kost BK, Dkt. _."

claim against McIntyre, as each asserted cause of action is either devoid of factual support, refuted by IOU's own allegations, or insufficient as a matter of law. IOU's demand for attorneys' fees in Count V is not an independent cause of action that can provide grounds for personal jurisdiction under Georgia's long arm statute.

IOU's sole allegation to establish McIntyre's presence in Georgia is McIntyre's appearance as counsel on behalf of an unrelated party, in an unrelated matter, in a Georgia court. That lawsuit has nothing to do with IOU's claims in the instant case. To force McIntyre into Georgia based on this single, attenuated contact would violate McIntyre's Due Process rights.

## IV.   LEGAL STANDARD

### A. Personal Jurisdiction: Constitutional Standard

Personal jurisdiction must comport with due process. Due process requires a nonresident "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citation omitted).

> The "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there…. But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.

*Walden v. Fiore*, 571 U.S. 277, 285 (2014).

There are of course two methods to obtain personal jurisdiction: general and specific. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 564 U.S. at 924. A corporation is "at home" in "the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1552 (2017).

In determining whether specific personal jurisdiction exists over a nonresident, courts conduct a three-part due process inquiry:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013).

## B. Motion to Dismiss: Legal Standard

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Mazer*, 556 F.3d at 1274. "A motion to dismiss for lack of personal jurisdiction **must** be granted if there are insufficient facts to support a reasonable inference that the defendant can be subjected to the court's jurisdiction." *See Lamensdorf v. New York University*, 2010 WL 11519546, *3 (M.D. Ga. 2010) (internal citation omitted, emphasis added).

6

> [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will [] be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). *See also Brazil v. Janssen Research & Dev. LLC*, 249 F. Supp. 3d 1321, 1335 (N.D.Ga. 2016) ("The Court also does not accept as true 'unwarranted deductions of fact or legal conclusions masquerading as facts.'") (quoting *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006)).

## V.   MCINTYRE IS NOT SUBJECT TO GENERAL JURISDICTION IN GEORGIA.

Mr. McIntyre is domiciled in Florida. McIntyre Firm is incorporated in Florida, and has its principal place of business in Florida. McIntyre does not maintain an office or agent in Georgia. IOU alleges McIntyre filed a lawsuit in Georgia for an unrelated client, but one lawsuit falls far short of establishing that McIntyre is "at home" in Georgia. *See Rowe v. Gary, Williams, Parteni, Watson & Gary, P.L.L.C.*, 723 Fed. Appx. 871, 874-75 (11th Cir. 2018).

## VI.   IOU FAILS TO ALLEGE A BASIS FOR SPECIFIC JURISDICTION OVER MCINTYRE IN GEORGIA.

Georgia's long-arm statute provides, in relevant part:

A court of this state may exercise personal jurisdiction over any nonresident…as to a cause of action arising from any of the acts, [or] omissions…enumerated in this Code section…if in person or through an agent, he or she:

(1) Transacts any business within this state;

(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; [or]

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state...

O.C.G.A. § 9-10-91.

In support of specific jurisdiction, IOU alleges:

Per O.C.G.A. § 9-10-90 et seq and/or the Constitution, personal jurisdiction exists, is proper and just for Defendants, who transacted business in Georgia personally and/or through their agent(s); such as RT/MT litigating a complex case in the Court from 2016-2018, Case No. 1:16-cv-02312-MLB [compare Doc 10-2] committed, or conspired to commit tortious acts or omissions, including by agents of each other, by persistent contact there, from which they derived revenue from services; reasonably consented to personal jurisdiction there, where they are subject to liability, purposefully availed themselves to activities there and consented to its jurisdiction.

IOU's word salad fails to state a viable basis for jurisdiction. Except for the reference to unrelated Case No. 1:16-cv-02312-MLB, IOU fails to differentiate between Defendants, making impossible to discern which of the allegations apply to McIntyre. Regardless of how IOU's allegations are construed, specific jurisdiction over McIntyre does not exist.

**A. IOU's Claims Do Not Arise from a Business Transaction with McIntyre.**

Under § 9-10-91(1), a court may exercise personal jurisdiction over a nonresident who transacts business in the state, "as to a cause of action arising from" that transaction. IOU alleges McIntyre "transacted business in Georgia" by representing an unrelated client in an unrelated matter in Georgia court. IOU's claims do not arise from McIntyre's appearance in that case. Ex. A, ¶39. The only Georgia business transaction related to IOU's claims is the Loan. McIntyre was not a party to the Loan, and did not represent EUSA or the Kosts at the time of that transaction. Ex. A, ¶12-14.

**B. IOU Does Not Allege a Tortious Act or Omission in Georgia.**

IOU appears to allege six tort claims against McIntyre: fraud, conspiracy, fraudulent transfer, and malicious procurement (Count III), aiding and abetting breach of fiduciary duty, and aiding and abetting conversion (Count IV). IOU also asserts a claim for attorneys' fees as a separate count (Count V).

The purported conduct underlying each of IOU's claims against McIntyre occurred entirely outside of Georgia. IOU alleges it had two phone or email communications with McIntyre in Florida initiated by IOU. Ex. A, ¶22-23. Under Georgia law, McIntyre's alleged statements or omissions, and thus any resulting tort, occurred in Florida, not Georgia. *See LABMD, Inc. v. Tiversa, Inc.*, 509 Fed. Appx. 842, 844 (11th Cir. 2013) ("For purposes of personal jurisdiction…Georgia courts

have ruled that—when a defendant uses the telephone or email to contact a Georgia resident—defendant's conduct occurs at the place where defendant speaks into the telephone or types and sends his email."); *Anderson v. Deas*, 279 Ga.App. 892, 893–94 (2006) (offense occurs where the defendant speaks into the telephone); *Huggins v. Boyd*, 304 Ga.App. 563, 565 (2010) (conduct occurred where defendant typed emails).

Addressed generally, IOU's tort claims against McIntyre fail because IOU's sole damage is nonpayment under the Loan by EUSA. *See e.g. Internal Med. All., LLC v. Budell*, 290 Ga.App. 231, 239 (2008) ("conversion is not a viable claim where there is nothing more than a failure by the defendant to pay money owed"); *Dixie Diners Atlanta, Inc. v. Gwinnett Fed. Bank, FSB*, 211 Ga.App. 364, 366 (1993) ("There is, moreover, *particularly* no confidential relationship between lender and borrower...for they are creditor and debtor with clearly opposite interests....");

IOU joins multiple causes of action in Counts III and IV based on vague, conflicting, and conclusory allegations, in violation of Rules 8(a)(2) and 10(b). As with its blanket jurisdictional allegations, Counts III and IV fail to differentiate between the defendants, or set forth facts with specificity. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007) (claims of fraud, aiding and abetting fraud, and conspiracy to commit fraud must be alleged with specificity).

When each claim that can be discerned from IOU's mishmash of allegations is individually tested, the result is the same: IOU fails to state a viable cause of action and cannot successfully assert personal jurisdiction over McIntyre in Georgia.

### 1. *IOU's Allegations of Fraud Do Not Provide a Basis for Jurisdiction over McIntyre.*

Fraud requires (1) a false representation; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance; and (5) damage. *See Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1027 (11th Cir. 2003).

IOU seemingly alleges McIntyre misrepresented that EUSA and the Kosts: 1) planned to sue Laboratoires Embryolisse, 2) were ending their business and ***not*** suing Laboratoires Embryolisse, and 3) could not repay the Funds. IOU claims McIntyre's statements were false, because "there was no French company to sue or pursue," EUSA and the Kosts "did not close but continued their business under a different name to fraudulently conceal it from IOU," and EUSA and the Kosts "had assets to pay the Loan [and] the ability to resume payments on the Loan."

The alleged representations that relate to supposed future events are not actionable in fraud as a matter of law. *See 6428 Church St., LLC v. SM Corrigan, LLC*, 352 Ga.App. 437, 440 (2019) ("[A] false representation is actionable in fraud only if it relates to an existing fact or past event. Opinions, predictions, and conjecture regarding future events do not give rise to a fraud claim.") (citations omitted).

11

IOU's allegation that Laboratoires Embryolisse does not exist is an irrational assumption, based solely on the allegation that "IOU has no indication that EM/TK/MK pursued any action against the French company." This allegation more plausibly infers EUSA simply chose not to file a lawsuit. Laboratoires Embryolisse absolutely exists. *See* Ex. A, ¶7-8, 27, 36-37, Exs.1, 4, 6. Laboratoires Embryolisse's termination of the distribution agreement and cease and desist letter establish EUSA discontinued its business and was required to change its name because it no longer had a license to use the Embryolisse mark. Ex. A, ¶8, 27, Exs.1, 4.

IOU assumes EUSA/the Kosts could afford Loan payments because the creditors in the Florida Circuit Court Cases alleged they were paid until February 2019. IOU's conclusion is logically flawed. EUSA's ability to pay other creditors does not equate to an ability to pay *all* of its creditors, including IOU. The Court need not accept IOU's unwarranted deductions of fact as true.

IOU also alleges McIntyre committed fraud by failing to disclose: 1) the 2017 and 2018 Mortgages, 2) EUSA and the Kosts' intent "to use the Funds to later retain RM/MT for other work," and 3) that EUSA and the Kosts "were not paying the Loan." McIntyre's alleged nondisclosures do not constitute fraud. "Suppression of a material fact is fraud only if there is a duty to disclose arising from a fiduciary relationship or the particular circumstances of the case." *Bogle v. Bragg*, 248 Ga.App. 632, 636 (2001). IOU does not allege any basis for imposing a duty of

12

disclosure on McIntyre. Instead, McIntyre was under an absolute duty **not** to reveal any information relating to the representation of his client to IOU. *See* Fla. R. Prof. Cond 4-1.6[4]; *In re Infocure Sec. Litig.*, 210 F. Supp. 2d 1331, 1352 (N.D.Ga. 2002) ("Although MM & M of course had undisclosed knowledge about Infocure, as its attorney, MM & M enjoyed a privilege (if not a duty) not to disclose confidential information.") (citing *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1206–07 (11th Cir. 2001)).

While IOU claims it relied on McIntyre's representations in not enforcing the Loan, IOU retained a collection agency to enforce the Loan immediately thereafter. Ex. A, ¶25-26. On behalf of IOU, Altus made multiple attempts to collect the debt from EUSA for months after McIntyre's alleged statements. Ex. A, ¶26, 28-31. The instant lawsuit is also an attempt to enforce the Loan.

Finally, any supposed fraud was committed in Florida, not Georgia. McIntyre "was never in Georgia at the time any alleged fraud was committed. Accordingly, OCGA § 9–10–91(2) is not applicable as a basis for exercising personal jurisdiction over [McIntyre]." *White v. Roberts*, 216 Ga.App. 273, 275 (1995).

### 2.  *There is No Basis to Assert "Conspiracy Jurisdiction" Over McIntyre.*

---

[4] IOU also alleges McIntyre violated the Florida and Georgia rules of professional conduct. These allegations are baseless, and the rules do not give rise to a third party cause of action. *See Oswell v. Nixon*, 275 Ga. App. 205, 207 (2005); *Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 786 (11th Cir. 2006).

"In this case, because [IOU's] underlying fraud claim fails, [IOU] cannot maintain a cause of action for conspiracy to defraud him." *Mustaqeem-Graydon v. SunTrust Bank*, 258 Ga.App. 200, 207 (2002).

IOU's "conspiracy and aiding and abetting allegations also do not pass muster under *Twombly*. The mere use of the words 'conspiracy' and 'aiding and abetting' without any more explanation of the grounds of the plaintiffs' entitlement to relief is insufficient." *Edwards v. Prime, Inc*., 602 F.3d 1276, 1300 (11th Cir. 2010).

IOU's allegations that "Defendants… **conspired** to commit tortious acts or omissions, including **by agents of each other**" [Doc. 36-1, ¶6, *see also* ¶55,] establish IOU cannot plead a plausible conspiracy claim against McIntyre. *See Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1213 n. 16 (11th Cir. 2018) (affirming dismissal of conspiracy count where, "in nearly each of its paragraphs under its conspiracy counts Sun Life seems to reaffirm its allegation that the producers were agents of Imperial"). A conspiracy between McIntyre and its clients is legally impossible because McIntyre is an agent of its clients. "[U]nder basic agency principles, the acts of a corporation's agents are considered to be those of a single legal actor." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000).

Because McIntyre was acting entirely within the scope of the representation of its clients, it is immune from a conspiracy claim. *See Steed v. EverHome Mortg.*

14

*Co.*, 2007 WL 9703392, at *3 (N.D.Ga. Oct. 22, 2007) "[A]s long as an attorney's conduct falls within the scope of the representation of his client, such conduct is immune from an allegation of a [] conspiracy.") (citing *Farese v. Scherer*, 342 F.3d 1223, 1232-33 (11th Cir. 2003)). Moreover, IOU's conclusion that McIntyre conspired with EUSA to fraudulently obtain the Loan is a strained deduction of fact the Court need not accept as true, as IOU loaned the Funds in July 2018, before McIntyre represented EUSA or its principals, or even knew them. Ex. A, ¶18-21.

Even if IOU could state a claim for conspiracy, IOU "must still allege tortious acts committed in Georgia by a resident co-conspirator" to establish jurisdiction over McIntyre. *J & D Int'l Trading (Hong Kong) Ltd. v. MTD Equip., LLC*, 2014 WL 1683375, at *8 (N.D.Ga. Apr. 28, 2014) (citing *Rudo v. Stubbs*, 472 S.E.2d 515, 516 (Ga.App. 1996)).

> To hold that a non-resident who personally has conducted no activity in or with Georgia is subject to our jurisdiction based solely upon the theory of a conspiracy would eliminate the requirement for a "minimum contact" between that defendant and this forum….

*Coopers & Lybrand v. Cocklereece*, 157 Ga.App. 240, 246 (1981). IOU cannot rest solely on allegations of conspiracy to assert jurisdiction over McIntyre.

### 3. IOU Fails to Allege a Plausible Claim for Fraudulent Transfer.

In the same Count III as its claims for fraud and conspiracy, IOU alleges McIntyre violated Georgia's Uniform Voidable Transactions Act. The Uniform Voidable Transactions Act does not provide a basis for personal jurisdiction over

McIntyre. First, a fraudulent transfer occurs where the funds are sent and received, which occurred in Florida. *See Cold Smoke Capital, LLC v. Gross*, 2012 WL 3612626, at *5 (N.D.Ga. Aug. 21, 2012) (citing *Nordberg v. Granfinanciera, S.A.* (*In re Chase & Sanborn Corp.*), 835 F.2d 1341, 1346 (11th Cir.1988) (holding that a fraudulent transfer, under bankruptcy law, occurred where the transferred funds were sent to and from), *rev'd on other grounds,* 492 U.S. 33 (1989)). When a transfer is sent and received outside of Georgia, any alleged damages are "sustained outside of Georgia." *Id.*

Second, because McIntyre, EUSA and the Kosts were not in Georgia at the time of the transfers, the statute is inapplicable. *See* O.C.G.A. § 18-2-80(b) ("A cause of action in the nature of a claim for relief under this article is governed by the law of the jurisdiction in which the debtor is located when the transfer is made or the obligation is incurred.").

Third, because IOU's fraudulent transfer claim is premised on the Kosts' insolvency, it violates the automatic stay in the Kost Bankruptcy, and belongs to the Bankruptcy estate. *See* 11 U.S.C. § 362.

> Because any property recovered pursuant to a fraudulent transfer action is property of the estate, the fraudulent transfer action itself is a claim of the estate… [Sections] 544 and 548 [of the Bankruptcy Code] provide exclusive standing to a trustee to prosecute a fraudulent conveyance action unless the trustee has abandoned that claim or the automatic stay has been lifted.

*In re Manton,* 585 B.R. 630, 635-6 (Bankr. N.D.Ga. 2018).

Finally, IOU appears to allege that "inducing IOU not to enforce the Loan," and filing for bankruptcy, are the transfers it seeks to avoid. Neither are transfers. *See* O.C.G.A. § 18-2-71(16). Moreover, IOU does not contend the Kosts were actually insolvent, but that McIntyre "concocted a phony insolvency." *See* Doc. 31, at 23. IOU's allegations that EUSA and the Kosts "had assets to pay the Loan [and] the ability to resume payments on the Loan" negate with the essential insolvency element of the claim.

### 4. IOU's "Malicious Procurement" Allegations Do Not Provide Jurisdiction Over McIntyre.

In Count III, IOU alleges McIntyre induced EUSA's and the Kosts' fraud in the inception of the Loan, EUSA's breach of the Loan, and the Kost Bankruptcy. McIntyre cannot be liable for procuring conduct that does not amount to "an actionable wrong or a breach of contract." *See In re Bay Circle Properties, LLC*, 2017 WL 3310979, at *1 (Bankr. N.D. Ga. Aug. 2, 2017) ("The Court need not address the viability of a claim for aiding and abetting a fraudulent transfer or aiding and abetting common law fraud under O.C.G.A. § 51–12–30; for either claim, Plaintiffs would have to establish the existence of some underlying liability.").

#### a. McIntyre Could Not Have Procured the Alleged Fraud.

IOU cannot substantiate its allegations that McIntyre counseled its clients in the initiation of the Loan, or to use Loan proceeds in connection with the 2017 or

2018 Mortgages. These transactions occurred before McIntyre knew or had a relationship with EUSA or the Kosts. Ex. A, ¶10-13, 20.

### b.  McIntyre Did Not Procure a Breach of the Loan.

The conduct IOU alleges McIntyre procured does not amount to an actionable wrong or a breach of contract. Even if, as IOU alleges, McIntyre instructed Mr. Kost to discontinue preauthorized ACH payments, withdrawing ACH authorization is not a failure to pay, and not a breach of the Loan. Cancelling ACH payments is a statutory right. *See* O.C.G.A. § 11-4-403 (a bank customer has the right to order his bank to stop payment or to close his account). "No liability exists for procuring a breach of contract when the breach is caused by the exercise of an absolute right." *Sowell v. Blackman*, 236 Ga. App. 705, 708 (1999).

Satisfying other debts is neither an actionable wrong nor a breach of contract. *See* O.C.G.A. § 18-2-40 ("A debtor may prefer one creditor over another"). IOU's contention that the Kosts' 2018 Mortgage was a breach of the Loan is directly controverted by its allegations as to the Loan terms. IOU alleges the Promissory Note precluded the Borrower (EUSA), not the guarantors (the Kosts), from obtaining another loan. *Id*. at ¶13, 23.

The only breach IOU alleges is nonpayment under the Loan. There are no well-pleaded facts to support IOU's conclusory statement that McIntyre "apparently" induced its clients' nonpayment. *See* Ex. A, ¶19. As EUSA's attorney,

McIntyre cannot be liable for interfering with the Loan as a matter of law. "[I]n order to be liable for tortious interference, one must be a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract." *BMC-The Benchmark Mgmt. Co. v. Ceebraid-Signal Corp.*, 2007 WL 2126272, at *7 (N.D.Ga. July 23, 2007), *aff'd in part,* 292 Fed. Appx. 784 (11th Cir. 2008). An attorney "acting in relation to or on behalf of parties to a contract" is not a stranger to the contract. *Id. See also Hyre v. Denise*, 214 Ga.App. 552, 555 (1994) ("[A]n attorney who on behalf of a client asserts or prosecutes a claim arising from contractual rights and duties is *not* a stranger to such contract…, so that a claim of tortious interference will *not* lie against him or his partners.").

### c.  McIntyre Did Not Procure the Kost Bankruptcy.

IOU appears to allege McIntyre maliciously procured the Kost Bankruptcy. Filing a petition for bankruptcy is also not an actionable wrong or a breach of contract. *See In re Virani*, 577 B.R. 599, 603 (Bankr. N.D.Ga. 2017) ("seeking to avoid the payment of debts is not an improper purpose" for filing bankruptcy); Doc. 36-1, ¶13. IOU's allegations regarding the Kost Bankruptcy concern administration of the bankruptcy estate, and must be raised in the bankruptcy court. 28 U.S.C. § 157(b). IOU did not object to discharge or any part of the Kost Bankruptcy. Kost BK, Dkt. 31.

IOU "has not alleged any facts to support that [McIntyre] engaged in any conduct outside the scope of [its] representation of [its clients], or that such conduct by [McIntyre] was not for the sole benefit of [its clients], rather than for [its] own personal benefit." *Steed*, 2007 WL 9703392, at *3. At most, IOU alleges McIntyre was paid for its legal representation of EUSA and the Kosts. "A fee alone can not be considered a positive factor or every legal representative to a transactional client could find itself owing a duty to the third party involved." *In re Infocure Sec. Litig.*, 210 F. Supp. 2d 1331, 1352 (N.D. Ga. 2002). *See also. R.W. Holdco, Inc. v. Johnson*, 267 Ga.App. 859, 864, 601 S.E.2d 177, 184 (2004) ("Moreover, ADT did not reap 'significant benefits' from the transaction, as Holdco maintains. It was paid only its previously accrued and unpaid bill for professional services out of the proceeds."); *Farese v. Scherer*, 342 F.3d 1223, 1232 (11th Cir. 2003).

### 5. *IOU's Aiding and Abetting Breach Claims Do Not Provide A Basis for Jurisdiction Over McIntyre.*

In Count IV, IOU alleges the Kosts owed IOU fiduciary duties because EUSA was insolvent. IOU alleges McIntyre "aided, abetted and procured" the Kosts' conversion of EUSA's assets and breach of fiduciary duties. Again, IOU's "aiding and abetting allegations do not pass muster under *Twombly*." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010). Aiding and abetting is not a discrete cause of action, but a theory of liability based on an underlying wrong. *See Kipperman*, 411

B.R. at 870. Because IOU fails to state claims for conversion or breach of fiduciary duty, McIntyre cannot be liable to IOU for aiding and abetting.

"[A]iding and abetting a breach of fiduciary duty, [is] equivalent to a claim for tortious interference." *Prof'l Energy Mgmt., Inc. v. Necaise*, 300 Ga. App. 223, 226, 684 S.E.2d 374, 378 (2009). "Similarly, courts have described aiding and abetting breach of fiduciary duty as a subset of civil conspiracy." *Kipperman*, 411 B.R. at 871. Because McIntyre was acting as its clients' agent, it was not a stranger, or third party, and cannot be liable for aiding and abetting a breach of fiduciary duty any more than it could be liable for conspiracy or tortious interference. *See Kahn v. Britt*, 765 S.E.2d 446, 458-9 (Ga. App. 2014) (holding trust's attorneys could not be liable for aiding and abetting because they were not strangers to the trust, and their actions were privileged, "regardless of whether the individual defendants committed any tort with respect to the trust").

IOU does not have standing to sue for conversion of EUSA's property, because IOU does not have title, possession, or a right to possession of EUSA's property. *See First Bank & Tr. Co. v. Ins. Serv. Ass'n, Inc.*, 154 Ga.App. 697, 699 (1980) ("[A]n action for conversion can be brought only by one who has title, possession, or a right to possession of the property."). The only property IOU specifically identifies as being converted are the Loan proceeds, which belong to EUSA, and are not subject to a claim for conversion. *See United States v. Ross*, 131

F.3d 970, 981 (11th Cir.1997) ("[L]oan proceeds do not remain the property of the lender.") (quoting *United States v. Kristofic*, 847 F.2d 1295, 1296 (7th Cir.1988)); *Taylor v. Powertel, Inc.*, 250 Ga.App. 356, 358–59 (2001).

If the Kosts owed IOU a fiduciary duty, IOU cannot establish McIntyre aided and abetted any breach. The only facts IOU pleads to substantiate its claim are that the Kosts satisfied the 2017 Mortgage with the Loan Proceeds, and obtained a line of credit secured by the 2018 Mortgage. But, McIntyre was not counsel to the Kosts at the time of those transactions, and could not have aided or abetted them. IOU assumes, without factual support, that the Kosts paid McIntyre a "sum at least equal to the Loan Balance." The $2,600 McIntyre received for its services in connection with the Florida Circuit Court Cases and Kost Bankruptcy is far less than the $111,190.85 Loan balance. Ex. A, ¶28, 33-35.

### C. IOU Fails to Allege Jurisdiction Based on Tortious Injury in Georgia.

O.C.G.A. § 9-10-91(3) permits a court to exercise personal jurisdiction over a nonresident who causes tortious injury within Georgia, "if the tortfeasor **regularly** does or solicits business, or engages in any other **persistent course of conduct**, or derives **substantial revenue** from goods used or consumed or services rendered in this state." "[T]he mere allegation that as a result of an act or omission by a nonresident outside this state an injury has occurred to a Georgia plaintiff does not establish a 'contact' with this forum in the absence of an implicit or explicit showing

of activity with or in Georgia by the nonresident." *Shellenberger v. Tanner*, 138 Ga.App. 399, 410 (1976). The activity in Georgia required by the statute must give rise to the cause of action asserted. *See Id.*

Even if IOU suffered injury in Georgia, that injury does not arise from any contacts set forth in § 9-10-91(3). IOU does not allege McIntyre regularly does or solicits business, facts showing any other persistent course of conduct, or substantial revenue from services rendered, in Georgia. One lawsuit does not suffice. Moreover, IOU does not allege its injury arises from that unrelated case.

### D. Jurisdiction Over McIntyre Cannot Rest on Its Client's Contacts with Georgia or Their Consent to Jurisdiction in Georgia.

IOU alleges McIntyre, as agent for EUSA and the Kosts, is liable, and subject to jurisdiction in Georgia, because of its clients' acts or omissions. IOU misunderstands the law. By its terms, § 9-10-91 provides jurisdiction over a principal based on its agent's conduct, **not** over an agent based on its principal's conduct. While a principal may be bound by the acts of its agent, "the doctrine of vicarious liability does not make the agent liable for the acts of the principal." *Leal v. Hobbs*, 245 Ga.App. 443, 445 (2000). *See also Mullinax v. Miller*, 242 Ga.App. 811, 815 (2000) ("plaintiffs essentially seek to hold the *agent* (Miller) liable for the acts of the *principal* (the campaign committee). We find no support for this theory of liability in logic or in case law.") (emphasis in original).

23

Without explanation, IOU alleges the consent to personal jurisdiction in Georgia in the Loan "applies" to McIntyre. Yet, McIntyre is not a party to the Loan transaction, and was not affiliated with any of the parties to the Loan at the time it was executed. Ex. A, ¶12-13. "A choice of law clause, [] is a contractual right that cannot ordinarily be invoked by or against a party who did not sign the contract in which the provision appears." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1169 (11th Cir. 2009).

## VII.  Exercise of Jurisdiction over McIntyre Would Violate Due Process.

McIntyre does not have minimum contacts with Georgia sufficient to exercise personal jurisdiction. McIntyre does not have an office, telephone, bank account, or property in Georgia. Ex. A, ¶40, and took no action in Georgia related to this lawsuit. Ex. A, ¶41-42. McIntyre could not reasonably anticipate being sued in Georgia for answering phone calls in Florida made by a creditor of its Florida clients.

Even if IOU's calls to McIntyre in Florida somehow satisfied Georgia's long arm statue, they are not sufficient minimum contacts to satisfy due process. *See Thomas v. Brown*, 504 Fed. Appx. 845, 848 (11th Cir. 2013) (holding defendants attorneys did not have sufficient minimum contacts with the forum state on nearly identical facts). *Watson v. Amateur Athletic Union of the United States, Inc.*, 2009 WL 10664981, at *2 (N.D.Ga. Jan. 7, 2009) ("[A] nonresident's telephone or mail contact with Georgia is generally insufficient to show the minimum contacts with

the state necessary to establish personal jurisdiction."); *ETS Payphone, Inc. v. TK Indus.*, 236 Ga.App. 713, 715 (1999) ("It is well settled that an out-of-state defendant will not be deemed to have engaged in purposeful business activity in this state on the basis of telephone or mail contact.").

McIntyre did not initiate contact with IOU. Ex. A, ¶22. McIntyre responded to IOU's collections efforts on behalf of its clients. Ex. A, ¶22-23. IOU's "unilateral activity" cannot establish jurisdiction over McIntyre.

## VIII.  IOU's Claims Should Be Dismissed for Improper Venue.

IOU's claims against McIntyre should be dismissed for improper venue pursuant to 28 U.S.C. §§ 1391(b) and 1404(a). IOU's sole allegation in support of venue is fails to establish venue is appropriate in this district: "Under 28 U.S.C. § 1391 and § 90, venue is proper as a substantial part of the events or omissions giving rise to the claims occurred." The relevant inquiry is *where*, not *whether*, the alleged events occurred. As set forth in detail above, all of the events or omissions giving rise to IOU's tort claims occurred in Florida. IOU admits all Defendants reside in Florida. None of the grounds for venue under 28 U.S.C. § 1391(b) apply to IOU's case against McIntyre. IOU's claims should be dismissed.

In the alternative, McIntyre requests the Court transfer venue to the Middle District of Florida, Tampa Division pursuant to 28 U.S.C. § 1404. The convenience of parties and witnesses, the interest of justice, and the other relevant factors weigh

in favor of venue in Florida. *See Manuel v. Convergys Corp.,* 430 F.3d 1132, 1135 n. 1 (11th Cir. 2005); *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1381 (11th Cir. 2009). Venue is appropriate in the Middle District of Florida, because all Defendants reside in that district, and a substantial part of the events or omissions giving rise to IOU's claims occurred, and the property allegedly securing the Loan is located, in the Middle District of Florida. *See* 28 U.S.C. § 1391(a)-(b). Any inconvenience to IOU in reinstating its case in Florida is outweighed by the inconvenience to all other parties in this lawsuit.

## CERTIFICATE OF TYPE SIZE AND STYLE

Counsel certifies that the size and style of type used in the foregoing document is Times New Roman 14 point.

RESPECTFULLY SUBMITTED this 2nd day of July, 2020.

/s/ William J. Diehl
**AARON M. KAPPLER**
Georgia State Bar No. 272533
**WILLIAM J. DIEHL**
Georgia State Bar No. 213998

THOMPSON, O'BRIEN, KEMP & NASUTI, P.C.
40 Technology Parkway South, Suite 300
Peachtree Corners, Georgia 30092
(770) 925-0111 - Telephone
*Attorneys for Defendants*