IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IOU CENTRAL, INC.
d/b/a IOU FINANCIAL, INC.,

      Plaintiff,

v.

                                        Civil Action File No.

EMBRYOLISSE USA, INC., et al,           1:19-cv-04427-TWT

      Defendants.
_____/

## RESPONSE TO IOU'S MOTION TO STRIKE AND FOR DEFAULT

      Defendants Richard J. McIntyre and McIntyre, Thanasides, Bringgold, Elliott, Grimaldi, Guito & Matthews, P.A. (collectively**,** "McIntyre"), hereby respond to *Plaintiff's Motion to Strike and/or Disregard/Exclude Motion to Dismiss/Affidavit/Notice and For Related Relief* [Doc. 47] as follows:

## I.     IOU AND ITS ACTIVITY IN THIS COURT

      1.      IOU makes high risk loans over the Internet. When its debtor's default, IOU sues non-parties to the loans and guaranties in Georgia, filing largely unintelligible, shotgun pleadings that assert specious conspiracy theories and threadbare jurisdictional allegations to try to obtain nuisance value payments from the non-parties. *See e.g. IOU Central, Inc. v. Schmitz et al* (1:20-cv-00007-ELR)

(IOU sued non-parties to the loan under various, mostly unclear legal theories. Judge Ross dismissed the non-parties to the loan for lack of personal jurisdiction in the Order attached hereto as **Exhibit A**); *IOU Central Inc. v. Voltata TP Acquisition LLC et al* (5:19-cv-00387) (IOU sued non-parties to the loan under various conspiracy and agency theories. Judge Ross dismissed the non-parties to the loan for lack of personal jurisdiction in the Order attached hereto as **Exhibit B**); *IOU Central, Inc. v. John's Baylobsters & Seafood et al* (1:19-CV-5090-TWT) (IOU sued debtor's Ohio attorney for serving notice of dissolution of debtor, asserting nonsensical legal theories it later dropped); *IOU Central, Inc. v. D'Agostino et* al (1:20-cv-02169-WMR) (IOU sued debtors' Connecticut bankruptcy attorney asserting a specious conspiracy to convert theory, which it later dropped); *IOU Central, Inc. v. Intercom, Inc. et al* (1:19-cv-04595-TWT) (IOU sued non-party Texas resident asserting various legal theories it later dropped); *IOU Central, Inc. v. Mason et al* (1:19-cv-04202-LMM) (IOU sued non-parties to a loan under various conspiracy and RICO theories. Judge May denied IOU's motion for default judgment, as the Second Amended Complaint was an improper shotgun pleading); *IOU Central, Inc. v. Pezzano Contracting and Development, LLC et al* (1:19-cv-04882-TCB) (after IOU lost case against debtors in Florida court, IOU brought same suit in Georgia state court, and brought separate suit in this Court against debtors

and non-parties to the loan, alleging elaborate RICO conspiracy in connection with loan); *IOU Central, Inc. v. Best Restorations, Inc. et al* (1:19-cv-05416-MHC) (IOU sought to hold non-guarantor liable under guaranty. Judge Cohen granted non-guarantor's motion to compel arbitration under guaranty, rejecting IOU's attempt to hold non-guarantor "liable under the Guaranty while preventing her from invoking the Guaranty's arbitration provision."); *IOU Central, Inc. v. Big State Tire and Axle, Inc. et al* (1:20-cv-00200-MHC) (IOU sued non-parties to the loan for various seemingly confused legal theories); *IOU Central, Inc. v. Straightline Commercial & Residential Coatings, Inc. et al* (1:19-cv-04749-SDG) (same); *IOU Central, Inc. v. Patel et al* (1:19-cv-05634-JPB) (same); *IOU Central, Inc. v. Trinity Valley Building Center, Inc. et al*(1:19-cv-05786-SDG) (same); *IOU Central, Inc. v. Vance et al* (1:19-cv-05862-CAP) (same); *IOU Central, Inc. v. Genuine Property Solutions, LLC et al* (1:20-cv-00213-LMM) (same); *IOU Central, Inc. v. Kailani Tours Hawaii, LLC et al* (1:20-cv-00448-LMM) (same); *IOU Central, Inc. v. Merrill et al* (1:20-cv-00453-JPB) (same); *IOU Central, Inc. v. Trujillo et al* (1:20-cv-01214-ELR) (same); *IOU Central, Inc. v. T&M Investments, Inc. et al*(1:20-cv-01223-ODE) (same); *IOU Central, Inc. v. Leonardos Auto Body Siny Inc. et al* (1:20-cv-02047-MHC) (same); *IOU Central, Inc. v. Charlton Enterprises, Inc. et al* (1:20-cv-02064-CAP) (same); *IOU Central, Inc. v. Krychev et al* (1:20-cv-02675-MHC)

(same); *IOU Central, Inc. v. MP Copiers, Inc. et al* (1:20-cv-02835-CC) (same); *IOU Central, Inc. v. Benz Acquisition Co., Inc. et al* (1:20-cv-02863-CC) (same); *IOU Central, Inc. v. Mahmud et al* (3:19-cv-00164-TCB) (same); *IOU Central, Inc. v. Metal Specialists, LLC et* al (3:20-cv-00014-TCB) (same); *IOU Central Inc. v. Swan Consulting Inc. et al* (1:20-cv-00031-MLB) (IOU sued non-parties to loan asserting various legal theories it later dropped); *IOU Central, Inc. v. Ladd et al* (1:20-cv-00112-SDG) (IOU sued borrower and borrower's family members, non-parties to loan, asserting various legal theories, later dropping the family member that moved to dismiss); *IOU Central, Inc. v. BADA International, Inc. et al*(1:20-cv-00161-SDG) (IOU sued non-party to loan pursuant to conspiracy and agency theories, though alleged no specific action by non-party); *IOU Central, Inc. v. Atlantic Mechanical Services, LLC et al* (1:20-cv-00265-MHC) (IOU sued guarantor's spouse, a non-party to loan pursuant to conspiracy and agency theories. Case was dismissed for IOU's failure to abide by Court order); *IOU Central, Inc. v. Vinyl Works, LLC et al* (1:20-cv-01272-WMR) (IOU sued non-party to loan pursuant to conspiracy and agency theories); *IOU Central, Inc. v. Rosin et al* (1:20-cv-02116-LMM) (IOU sued non-parties to loan pursuant to conspiracy and agency theories, despite previously suing on loan in Florida circuit court); *IOU Central, Inc. v. Shore Appliance Connection Inc. et al* (1:20-cv-02367-MLB) (IOU sued non-

parties to loan pursuant to conspiracy and agency theories, despite previously filed action in Maryland circuit court).

2.      If IOU is to be believed, it has been the victim of more than 20 conspiracies in Georgia this past year alone.

3.      In truth, IOU uses this Court as a tool to obtain undeserved leverage against innocent, out-of-state third parties. IOU is not a real victim of many conspiracies, it is a bully that uses the expense of federal litigation in another state to extort nonresidents.

4.      If the Court reviews the dockets of the above cases, it will see that, as part of its scheme, IOU frequently files meritless motions to strike and other such vexatious motions making outlandish unsupported allegations of litigation wrongdoing to increase the cost for its out-of-state victims. IOU will routinely throw a flood of arguments against the wall to see if any stick, without verifying the accuracy of its assertions, knowing that its opponent will have to respond to each claim no matter how frivolous. IOU believes it has nothing to lose with this careless approach to filings in this Court. *Cf.* 28 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be

required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.").

## II.   <u>THIS CASE</u>

5.     In the instant case, IOU made a loan to a Florida debtor, EUSA. Sometime after the loan, EUSA defaulted.

6.     EUSA later retained McIntyre, a Florida law firm. EUSA asked McIntyre to respond to its creditors on its behalf.

7.      IOU and its debt collector made a couple of phone calls to McIntyre in Florida and sent McIntyre a couple emails in Florida in an effort to collect on the loan. IOU is based in Georgia. Its debt collector is in Louisiana.

8.     IOU claims that, on a telephone call, McIntyre misrepresented EUSA's present ability to pay and its plan to negotiate with its French supplier. IOU claims that, although it did not initially rely on McIntyre's supposed representations, it eventually did for some reason, causing it to pause its collection efforts by a few months. IOU alleges that the guarantors of the loan would have paid the loan in full but for IOU's temporary pause in collection efforts.

9.     When IOU filed this lawsuit against the guarantors a few months after the pause, the guarantors filed bankruptcy. IOU would have this Court believe that the guarantors somehow went from being able to pay the $110,000 loan in full to

filing bankruptcy a few months later, even though IOU did nothing in the bankruptcy to investigate where the money went or try to recover any fraudulent transfers by the guarantors. IOU would also have this Court believe that the guarantors would have paid IOU instead of whatever else they supposedly did with the $110,000, if only IOU had not paused its collection efforts.

10.     IOU argues it can hale McIntyre into a Georgia court based on the collection communications made to McIntyre in Florida by IOU (from Georgia) and its debt collector (from Louisiana).

11.     On July 2, 2020, McIntyre filed its Motion to Dismiss the Second Amended Complaint ("SAC") for lack of personal jurisdiction and improper venue ("MTD") and an affidavit ("Affidavit") in support. [Doc. 42].

12.     On July 20, 2020, after the deadline to respond to the MTD, IOU filed an unopposed motion to extend the deadline until July 22, 2020 to file a response. [Doc. 44].

13.     July 22 came and went. On July 27, McIntyre filed a notice of IOU's failure to respond to the MTD ("Notice"). [Doc. 45]. As summarized in the Notice, IOU also failed to timely respond or move to extend the time to respond to McIntyre's motion to dismiss directed to IOU's First Amended Complaint. IOU's

failure to meet Court-imposed deadlines and its own unilaterally extended deadlines is now a pattern in this case.

14.    On July 30, IOU filed a "Motion to Strike and/or Disregard/Exclude Motion to Dismiss/Affidavit/Notice and For Related Relief" ("MTS"). [Doc. 47].

15.    The MTS asks the Court to strike McIntyre's Notice, the MTD, and the Affidavit, and to enter a default judgment against McIntyre.

16.    IOU makes a number of specious accusations against McIntyre, broadly ranging from alleged violations of Local Rules to perjury. IOU contends this alleged misconduct necessitates striking McIntyre's motion to dismiss and entry of a default.

17.    Only one of IOU's accusations has any merit: McIntyre's MTD has 1-inch margins, not the 1.5-inch top margin required by Local Rule 5.1(D).

18.    McIntyre apologizes to the Court for this formatting error. The mistake was not intentional, and not meant to flout the Rules and authority of this Court.

19.    The Court should be aware that IOU's three iterations of its complaint also have 1-inch top margins.

20.    McIntyre respectfully requests the Court exercise its discretion to forgive strict compliance with Local Rule 5.1(D) in connection with McIntyre's MTD. McIntyre will ensure it uses 1.5-inch top margins going forward.

21.     If the Court determines that the 1-inch top margin in the MTD warrants striking the MTD, McIntyre requests the Court also strike IOU's Complaint, First Amended Complaint, and SAC, since they also have 1-inch top margins in violation of the same rule.

22.     As set forth below, IOU's remaining accusations are unfounded, if not completely fabricated.

23.     Furthermore, the ultimate relief sought in the MTS—a default judgment against McIntyre—would be void for lack of personal jurisdiction. This case has been pending for nearly a year, and personal jurisdiction over McIntyre has yet to be established. IOU has repeatedly amended its complaint to avoid a determination on jurisdiction.

## III.   **MEMORANDUM**

"Motions to strike may be made only to pleadings." *Exceptional Mktg. Group, Inc. v. Jones*, 749 F. Supp. 2d 1352, 1358 (N.D. Ga. 2010) (Thrash, J.) (citing Fed. R. Civ. P. 12(f)). "The Defendants have moved to strike portions of the Plaintiff's declarations filed in support of the Plaintiff's Response to the Defendants' Motion to Dismiss. … The Court will consider the motion as an objection to consideration of the declaration." *Id.*

"A declaration may only be considered to the extent that it is based on personal knowledge. However, when an affiant avers that his statements are based on personal knowledge, a district court is bound to accept such statements as true, unless the context demonstrates otherwise." *Id*. (internal citations and quotations omitted).

"Entry of judgment by default is a drastic remedy which should be used only in extreme situations, as the court has available to it a wide range of lesser sanctions." *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985). "Generally, a district court may use its inherent power to enter a default judgment only if it finds, first, by clear and convincing evidence—a preponderance is not sufficient—that the abusive behavior occurred; and second, that a lesser sanction would not sufficiently punish and deter the abusive conduct while allowing a full and fair trial on the merits." *Chemtall, Inc. v. Citi-Chem, Inc*., 992 F. Supp. 1390, 1408 (S.D. Ga. 1998) (citations omitted). As set forth herein, IOU's MTS falls far short of establishing McIntyre engaged in any abusive behavior and certainly none by clear and convincing evidence.

## A. McIntyre Did Not Attempt to Circumvent Page Limitations or Other Local Rules.

IOU accuses McIntyre of violating Local Rules 5.1 and 7.1 in "an apparent effort to circumvent page limits." The MTD is just shy of 25 full pages, excluding

the case caption and the signature block. As IOU's counsel is aware (*see Plaintiff's Response to Motion to Dismiss and Cross-Motion to Amend* (Doc. 31); *Plaintiff's Response to Motion to Dismiss* (Doc. 50)), excluding the caption and signature block from the page limit is standard practice. *See e.g. Moore v. Adventist Health Sys./Georgia, Inc.*, 4:06-CV-0192-HLM, 2007 WL 9718837, at *15 (N.D. Ga. Feb. 6, 2007) ("The Court does not generally include the signature pages for briefs when determining whether briefs exceed the page limitations. Consequently, the Court finds that Defendants' briefs do not violate the page limitations established by the Local Rules."); *Wood v. Archbold Med. Ctr., Inc*., 7:07-CV-109 HL, 2010 WL 3069126, at *1 (M.D. Ga. Aug. 3, 2010) ("The signature pages and certificates of service attached to the documents are not counted."). The MTD is typed in 14 point, Times New Roman font.

Contrary to IOU's claim, the MTD does not contain "pages of arguments in its footnotes." There are only _four_ footnotes in the MTD, each single spaced and in 14 point, Times New Roman font, as permitted by LR 5.1(C). Only footnote 4 contains any argument, and it is slight; the other three merely provide procedural context or note abbreviations. Each footnote is an aside, and thus appropriately formatted as a footnote. Had McIntyre instead included the footnoted text in the body of the motion, the page count would have been identical. To demonstrate, attached

hereto as **Exhibit C** is a version of McIntyre's MTD with the text moved from the footnotes to the body of the document, and highlighted for ease of reference. The last page of the filed document and the version attached as Exhibit C are identical, as the use of footnotes made no difference to the page-count.

### B. Contrary to IOU's Claim in the MTS, the SAC Alleges the French Company Does Not Exist.

In Count III of the SAC, IOU alleges: "Defendants knew or should have known the statements of RM/MT were false as…***there was no French company*** to sue or pursue." SAC, ¶ 73 (emphasis added). In the MTS, IOU contends it did not make this allegation and that McIntyre should be defaulted because the Affidavit contains a false oath when it asserts IOU made the allegation. IOU is simply wrong. The allegation is in paragraph 73 of the SAC, in express, black-and-white terms. Accordingly, IOU's claim in the MTS that it did not allege in its SAC that the French company did not exist is the real misrepresentation to the Court, not the Affidavit's accurate reference to the allegation.

### C. Neither the Bankruptcy Schedules Nor Judicial Estoppel Render McIntyre's Affidavit False.

IOU challenges McIntyre's testimony that McIntyre received $600 for representing EUSA and the Kosts in two state court collection lawsuits. IOU argues McIntyre's testimony that it was paid is false because the Kosts' bankruptcy

schedules do not disclose the payments. IOU appears to argue the Kosts' discharge judicially estops McIntyre from contradicting the Kosts' disclosures.

First, the Kosts' bankruptcy schedules and statements are "pure hearsay" and thus inadmissible. *See Leachman v. Mitchell*, 171 S.E.2d 760, 763 (Ga. Ct. App. 1969) ("The only other evidence on this question was the petition in bankruptcy with its schedule of assets and liabilities sworn to by the bankrupt. Does this petition, sworn to by the bankrupt, have any probative value to prove the correctness of the list of debts and assets? We think not. It is nothing more than an *ex parte* affidavit and pure hearsay as to the truth of its contents, and not coming within any of the exceptions to the hearsay rule, has no probative value and proves nothing…") (internal citation omitted); *In re Presta*, 3:09-BK-1222-JAF, 2014 WL 2448444, at *2 (Bankr. M.D. Fla. May 28, 2014) ("Consistent with the hearsay rule, statements contained in bankruptcy schedules are inadmissible."). *See also Leslie v. Leslie,* 181 B.R. 317, 322 (Bankr. N.D. Ohio 1995) (noting that "the actual truth of the [hearsay] assertions contained in a Debtor's bankruptcy schedules cannot be readily ascertained and such assertions are not the proper subject of judicial notice."); *Brown v. Brock*, 169 Fed. Appx. 579, 582 (11th Cir. 2006) ("the district court cannot take judicial notice of the bankruptcy petition that was attached by the Rule 12(c) movant").

Next, judicial estoppel is inapplicable. Under the doctrine of judicial estoppel, "a party may not assert a position in one suit that is contrary to the position successfully asserted <u>by the same party</u> in a prior action." *S.J. Groves & Sons Co. v. Fulton County*, 967 F. Supp. 501, 503 (N.D. Ga. 1996) (emphasis added). McIntyre "could not have asserted an inconsistent position in the [bankruptcy] proceeding, because it was not a party to it." *Stinson v. State*, 569 S.E.2d 858, 860 (Ga. Ct. App. 2002). The Kosts' bankruptcy schedules cannot estop McIntyre, as they are not McIntyre's statements under oath. *See Parker v. Wendy's Intern., Inc*., 365 F.3d 1268, 1272 (11th Cir. 2004).

IOU offers no evidence that the Kosts' omission was intentional, rather than mere oversight of a *de minimus*, immaterial expenditure by the Kosts. *See Cruz-Lovo v. Ryder Sys., Inc.*, 2003 WL 23150113, at *3 (11th Cir. Nov. 5, 2003) ("[B]ecause the rule of judicial estoppel looks toward cold manipulation and not an unthinking or confused blunder, it has never been applied where plaintiff's assertions were based on … inadvertence, or mistake.") (quoting *Johnson Service Co. v. Transamerica Ins. Co.,* 485 F.2d 164, 175 (5th Cir. 1973)).

IOU's contention that McIntyre's MTD and Affidavit "falsify sworn bankruptcy schedules resolving issues" is otherwise not clear enough for McIntyre to respond.  Bankruptcy schedules do not resolve issues. In any event, the Kosts'

bankruptcy is an open case. If IOU has issues regarding the Kosts' disclosures in the bankruptcy case, it can raise them there, in the Middle District of Florida.

Finally, IOU accuses McIntyre of failing to disclose the bankruptcy to the Court. But, McIntyre referenced the bankruptcy in both its MTD and Affidavit. *See* MTD, 3-4, 13; Doc. 42-2, ¶¶32, 35.

### D. If Judicial Estoppel Establishes McIntyre Was Not Paid for Representing EUSA and the Kosts, IOU's Claims Premised on the Payments Must Be Dismissed.

The SAC is premised on IOU's allegation that McIntyre <u>was paid</u> the $600 it received to defend EUSA and the Kosts in the two state court lawsuits. *See* SAC, ¶ 40 ("On 7/22/19, EM/TK/MK paid RM/MT to defend them in the above State Court Case…."); ¶ 43 ("On 10/1/19, EM/TK/MK paid RM/MT to defend them in the above State Court Case…."); ¶ 47 ("the Funds were used, at least in part to pay the fees of RM/MT in the above cases"). IOU's new position in its MTS defeats these bases for IOU's causes of action. If McIntyre was <u>not</u> paid to defend EUSA and the Kosts in the two lawsuits, as IOU asserts in the MTS, IOU's causes of action for fraud, fraudulent transfer, and aiding and abetting breach of fiduciary duty/conversion for accepting $600 to defend the lawsuits must fail.

IOU's MTS incorporates IOU's Response to McIntyre's Motion to Dismiss the Second Amended Complaint [Doc. 50] ("Response to MTD") (which had not

been filed at the time it was incorporated into the MTS). The Response to MTD in turn incorporates an affidavit executed by Phil Bishop, a representative of IOU [Doc. 50-6] ("IOU Affidavit"). The IOU Affidavit states:

> **I verify under penalty of perjury that the factual allegations of IOU's Second Amended Complaint**, copies of the Note, Guaranties and Debit Agreement and Bankruptcy Schedules in IOU's Response to the Motion to Dismiss filed today and below, **allegations, which I read, are true**, which I am authorized to provide for Plaintiff IOU Central Inc. d/b/a IOU Financial, Inc.

Doc. 50-6 (emphasis added). In other words, IOU swears, under oath, that the facts alleged in its SAC are true. The SAC alleges McIntyre received payment for defending EUSA/the Kosts in the two state court cases. *See* SAC ¶¶ 40, 43, 47, 73, 78, 83 (cited above); Doc. 50 ¶11 (McIntyre "profit[ed] from misuse of the Funds"); ¶18 ("while paying RT/MT"); ¶20 ("the Funds were used, at least in part to pay the fees of Movants, who misrepresented to IOU that EM/the Kosts could not afford to make Loan payments, which benefitted Movants"). Thus, in the MTS, IOU accuses McIntyre of falsely testifying that it was paid in the two state court cases and also incorporates a subsequent document in which it swears that McIntyre was paid in those cases. IOU wants McIntyre sanctioned for swearing under oath to the same thing that IOU swore under oath. IOU believes it can say whatever it wants to this Court without care or consequence.

### E.  The Affidavit Does Not Contain Inadmissible Offers to Compromise.

IOU's contention that the communications from Altus Global Trade Solutions ("Altus") are inadmissible offers to compromise is without merit. Altus is the debt collection agency IOU retained to collect the debt from the Kosts and EUSA. Altus's communications to McIntyre concerned EUSA's default under the Loan.

Rule 408 precludes evidence of offers to compromise a claim, when offered to prove liability for, invalidity of, or amount of the same claim. McIntyre offers Altus's correspondence in connection with IOU's claim for "fraud" against McIntyre, not to prove or disprove EUSA's liability under the Loan. IOU's frivolous claims against McIntyre were not addressed, or even contemplated, in Altus's communications with McIntyre.

Finally, while IOU argues in the MTS that McIntyre wrongfully disclosed supposed settlement communications with Altus, IOU's later-filed Response to the MTD complains McIntyre should have disclosed more communications with Altus. IOU cannot keep its positions straight because they are not real. IOU just throws them against the wall, hoping one might stick but knowing it has caused McIntyre expense regardless.

### F. Statements By IOU's Collection Agent Are Not Hearsay When Offered By McIntyre, But Are Hearsay When Offered By IOU.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). "Excepted from the definition of hearsay, however, is 'a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship,' which is deemed an admission by a party opponent. *See* Fed.R.Evid. 801(d)(2)(D)." *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1456 (11th Cir. 1997). IOU alleges the communications from Altus is inadmissible hearsay. The communications are offered to prove IOU continued its collection efforts after McIntyre's supposed misrepresentations, negating IOU's claim that it stopped such efforts in reliance on the claimed misrepresentations. The primary evidentiary purpose of the correspondence is to establish *when* the communications occurred, not the truth of any matter asserted in the communications. They are thus not hearsay.

IOU admits Altus was its agent in Altus's communications with McIntyre. *See* MTD, ¶ 15; pp. 12-13. Further, by arguing Altus's communications are offers to compromise IOU's claims, IOU necessarily concedes Altus was authorized to act on IOU's behalf regarding the debt. Thus, when offered by McIntyre, Altus's

statements are not hearsay, but admissions by a party opponent. *See* Fed.R.Evid. 801(d)(2)(D).

In its Response to McIntyre's MTD, IOU relies on notes made in Altus's online portal that reflect someone at Altus spoke to an attorney at McIntyre firm, and the attorney made certain representations. *See* Doc. 50-6, ¶18-20; Doc. 50, ¶27, pp 11-12. When offered by IOU, Altus's out-of-court notes are unequivocal hearsay. They are offered to prove the truth of the matter asserted by Altus in the notes (that some attorney made the supposed representations). IOU offers no evidence or argument that that any exception applies to the self-serving assertions on Altus's online portal. IOU does not identify who made the assertions, how they were made, or anything at all that indicates reliability.

### G. Emails from Laboratoires Embryolisse are Not Hearsay.

The two email exchanges between EUSA and its French manufacturer, Laboratoires Embryolisse, are also not hearsay. The email exchanges are not offered to prove the truth of the statements made therein, but to prove that the statements were made. In the Second Amended Complaint, IOU alleges McIntyre defrauded IOU by misrepresenting that EUSA's French manufacturer, Laboratoires Embryolisse, terminated EUSA's distribution agreement, that a dispute between the two companies was ongoing, and that EUSA was ending its business. IOU also

alleged that McIntyre helped EUSA change its name as part of a fraudulent scheme to hide from IOU.

The two email exchanges between EUSA and Laboratoires Embryolisse prove McIntyre was told that EUSA's French manufacturer, Laboratoires Embryolisse, terminated EUSA's distribution agreement, that a dispute between the two companies was ongoing, that EUSA was ending its business, and that EUSA changed its name based on a demand to do so by the trademark owner of EUSA's name. The emails are thus offered to prove that the information was conveyed to McIntyre, not that it was true.

"Even to the extent portions of the [affidavit or exhibits] may nevertheless qualify as hearsay, 'there is no strict prohibition on a court's consideration of hearsay' in connection with a motion to dismiss for lack of personal jurisdiction. *Campbell Pet Co. v. Miale*, 542 F.3d 879, 889 (Fed.Cir.2008)." *Nuance Communications, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010). IOU does not attack the evidence attached to the affidavit as unreliable. Accordingly, to the extent the affidavit sets forth evidence that would otherwise constitute hearsay, the Court may consider such evidence in adjudicating McIntyre's motion to dismiss for lack of personal jurisdiction.

**F. The Exhibits Attached to the Affidavit Are Authenticated.**

McIntyre sufficiently identified the communications attached to the affidavit. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901. The affidavit is testimony of a witness with knowledge (the recipient of the correspondence) that the exhibits to the affidavit are the correspondence received by McIntyre. *See* Fed. R. Evid. 901(b)(1). IOU does not call into question the authenticity of the e-mails; IOU merely claims they were not authenticated. But, they were.

**G. McIntyre's Affidavit is Based on Personal Knowledge**

IOU objects to McIntyre's affidavit as not based on personal knowledge, but does not identify which statements are not based on personal knowledge. However, IOU appears to contend McIntyre does not have personal knowledge as to the communications between the Kosts and third parties, including Altus, and Laboratoires Embryolisse. Again, these communications are not referenced in the Affidavit to prove they actually occurred, but that McIntyre was told they occurred. McIntyre has personal knowledge of the communications it received.

IOU also claims McIntyre's statement that it did not consent to jurisdiction in Georgia is an improper legal opinion. That is nonsense. Whether McIntyre agreed to

something or did not is a mixed question of law and fact. The issue begins with: what did McIntyre say or do? That is a factual determination. The Affidavit merely says McIntyre never consented to jurisdiction. This means it did not say or do anything to indicate consent.

Moreover, in the SAC, IOU alleged McIntyre consented to jurisdiction in Georgia, but failed to allege any facts in support. If McIntyre's sworn statement that it did not consent to jurisdiction in Georgia is an improper legal opinion, the same must be true of IOU's unsworn statement to the contrary. If IOU's allegation is mere legal opinion, then it should be disregarded entirely and cannot form a basis for jurisdiction over McIntyre. In that case, it is irrelevant whether McIntyre's denial is a mixed assertion of fact and law or a pure opinion of law.

Finally, IOU claims the Affidavit contains improper opinions as to Mr. McIntyre but does not specify which statements are improper opinions. The Affidavit is executed by the representative of the McIntyre Firm and includes matters within the McIntyre Firm's knowledge.

## H. IOU's Remaining Arguments Are Insufficient to Warrant Striking Anything or Entering a Default.

IOU contends McIntyre Firm lacks standing to raise personal jurisdiction defenses on behalf of Mr. McIntyre. Yet, the motion to dismiss and brief were filed

on behalf of both Mr. McIntyre, individually, and the McIntyre Firm. Mr. McIntyre's motion is not made through the McIntyre Firm. He has filed the motion directly. Nothing in the rules requires each defendant to execute a separate affidavit in support of a motion to dismiss. A motion to dismiss for lack of personal jurisdiction can rely on the affidavit of any witness with personal knowledge of the relevant attestations.

IOU also contends McIntyre lacks standing to raise defenses on behalf of EUSA. As McIntyre does not represent EUSA in this matter, McIntyre has not raised defenses on EUSA's behalf.

IOU makes a point to argue McIntyre was served with the SAC. IOU never explains the relevancy of this assertion. McIntyre accepted the SAC by email, as it must since it appeared in the case through local counsel. This does not mean McIntyre's MTD should be stricken.

Finally, IOU requests the Court take judicial notice of the matters alleged in IOU's Motion to Strike. With the exception of the Court's rules and the dates various documents were filed on the Court's docket, IOU's arguments are not the proper subject of judicial notice. Fed. R. Evid. 201(b) provides,

> The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

Fed. R. Evid. 201(b). "In order for a fact to be judicially noticed under Rule 201(b), indisputability is a prerequisite." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). *See also Leslie v. Leslie,* 181 B.R. 317, 322 (Bankr. N.D. Ohio 1995) (noting that "the actual truth of the [hearsay] assertions contained in a Debtor's bankruptcy schedules cannot be readily ascertained and such assertions are not the proper subject of judicial notice."); *Brown v. Brock*, 169 Fed. Appx. 579, 582 (11th Cir. 2006) ("the district court cannot take judicial notice of the bankruptcy petition that was attached by the Rule 12(c) movant").

## CERTIFICATE OF TYPE SIZE AND STYLE

Counsel certifies that the size and style of type used in the foregoing document is Times New Roman 14 point.

RESPECTFULLY SUBMITTED this 13th day of August, 2020.

 /s/ *William J. Diehl*
**AARON M. KAPPLER**
Georgia State Bar No. 2727533
**WILLIAM J. DIEHL**
Georgia State Bar No. 213998

THOMPSON, O'BRIEN, KEMP & NASUTI, P.C.
40 Technology Parkway South, Suite 300
Peachtree Corners, Georgia 30092
Telephone: (770) 925-0111
*Attorneys for McIntyre Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of **DEFENDANTS'**

**RESPONSE TO IOU's MOTION TO STRIKE** by using the Court's CM/ECF

electronic filing system upon the following:

Paul G. Wersant
3245 Peachtree Parkway, Suite D-245
Suwanee, Georgia 30024
Phelan Hallinan Diamond & Jones, PLLC
11675 Great Oaks Way, Suite 375
Alpharetta, Georgia 30022
pwersant@gmail.com

This 13th day of August, 2020.

 /s/ *William J. Diehl*
**AARON M. KAPPLER**
Georgia State Bar No. 2727533
**WILLIAM J. DIEHL**
Georgia State Bar No. 213998

THOMPSON, O'BRIEN, KEMP & NASUTI, P.C.
40 Technology Parkway South, Suite 300
Peachtree Corners, Georgia 30092
Telephone: (770) 925-0111
*Attorneys for McIntyre Defendants*