IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IOU CENTRAL, INC.      :
d/b/a IOU FINANCIAL, INC    :
               :
  Plaintiff,       :
vs.            :
               :  CASE NO: 19-cv-04427-TWT
EMBRYOLISSE USA, INC n/k/a  :
ZOBEAUTY, INC., ET AL    :
               :
  Defendants.      :

## RESPONSE TO ORDER TO SHOW CAUSE [DOC 66]

Plaintiff and its counsel respond to the Order [Doc 66] as follows:

## STATEMENT OF FACTS

1.  The captioned case concerned a promissory note for $161,250,00,

consisting of funds advanced by IOU, a commercial small business lender, to

Defendant Embryolisse, a Florida company, a distributor of a French cosmetics

company. The Note had a one-year maturity date, included a security agreement on

all property owned by Embryolisse, guaranteed by both Kost Defendants [Doc 36,

Second Amended Complaint, Doc 50, Response and Exhibits 1-4] During the loan

term, Defendants McIntyre and Thanasides instructed the Embryoliss and Kost

Defendants to default on the loan, advised IOU that their clients were insolvent,

but bankrupted them over a year later, after IOU filed this lawsuit [Doc 16].

1

2.      IOU brought suit to (a) recover the sums under the Note/Guarantees and (b) for damages against McIntrye and Thanasides Defendants accountable for improperly procuring the loan default (c), as the evidence indicates the loan could have been resolved before the bankruptcy they were paid to file, which are allegations that IOU verified under oath [Doc 50-6].

3.      Only the McIntrye and Thanasides Defendants appeared in this case, represented by a firm, a bankruptcy trustee in the Northern District [Doc 11].

4.      During this case, defense counsel filed an untimely motion to strike to which Plaintiff responded with its motion [Doc 25]. Both were denied. [Doc 30].

5.      Plaintiff's counsel did his best to develop the record, without the benefit of discovery or disclosures, moving for leave to file the Second Amended Complaint which the Court granted [Doc 35] and introducing its loan documents, communications and bankruptcy records into evidence [Doc 50].

6.      Ultimately, the Court dismissed the case against the McIntyre Defendants for lack of personal jurisdiction, directing Plaintiff to file a Third Amended Complaint against Embryolisee [Doc 65]. Plaintiff instead voluntarily dismissed the rest of the case, as Embryolisse is currently a shell and there was no further purpose to litigation [Doc 67]. The case was then closed [Doc 68].

7. McIntyre was sued in 2005 for similarly interfering with a commercial leasehold by unlawfully ousting the tenants. M.D. of Fla. Case No. 8:05-ap-000777-ALP [Doc 1, Complaint] of which the Court is requested to take notice.

8. Defense counsel asked the Court to take judicial notice of other cases in the Court, alleging that Plaintiff and its counsel file improper suits in the Court to obtain 'nuisance value payments' from non-parties [Doc 54, p. 4]. However, the notice did not address the alleged conduct of the McIntryre Defendants in this case, which again IOU detailed and verified [Doc 50].

9. Defense counsel provided few or no details of the cases, which the Court investigated, stating that counsel for Plaintiff epeatedly violated the Court's local rules and filed motions to improperly harass opposing parties and increase litigation costs, filing improper shotgun pleadings, vexatious motions to strike, failing to meet filing deadlines, about which concerns were raised by other judges.

10. Defense counsel provided few or no details of the cases, which the Court investigated, stating counsel for Plaintiff repeatedly violated local rules and filed motions to improperly harass opposing parties and increase litigation costs, filing improper shotgun pleadings, vexatious motions to strike, failing to meet filing deadlines, about which concerns were raised by other judges [Doc 66, p. 7]

11.     The Court noted the contention of defense counsel that Plaintiff uses cases as leverage as to innocent out-of-state third parties to extort settlements from third parties, files meritless motions to strike and uses invalid arguments to which its opponents must respond, *arguments*, not facts for judicial notice. [Doc 66, p. 7] The McIntyre Defendants however are not a debtor, but a commercial litigation and bankruptcy firm which allegedly interfered with a creditor-debtor relationship, with a financial interest in ensuring Plaintiff's loan was not paid, whose defenses were litigated on the merits. Their actions resulted in this litigation.

12.     Based upon this notice, the Court concluded IOU and its counsel use federal litigation to harass its debtors and extract nuisance value settlements from third parties, per the violations of local Rules, voluminous filings deemed improper or meritless and other concerning actions, directing IOU and its counsel to show cause why sanctions should not be imposed under Rule 11 (b). [Doc 66, p. 6-7]

13.     Sanctions should not be imposed as detailed below.

## MEMORANDUM

### I.   Plaintiff and its counsel had valid grounds to sue the McIntyre Defendants, particularly as the claims could be brought in Florida.

Plaintiff and its counsel had valid grounds to sue Embryolisse for defaulting on the Note and Security Agreement at issue, for $161,250.00 and the Kost Defendants for defaulting on the Guarantees, for which time was of the essence, who defaulted on the loan and the Kosts were discharged in a bankruptcy filed by the McIntyre Defendants [Doc 36-1, p. 1-8]. Plaintiff and its counsel also had valid grounds to sue the McIntyre Defendants for their interference with performance of the Note and Guarantees, which detailed the following matters in responding to the Motion to Dismiss, based upon law and facts.

(a)   In July 2018, the Note and Guarantees negotiated by the Debtor-Defendants, to Plaintiff in Georgia, to be paid from their bank account with a debit agreement, ensuring repayment by the one-year maturity date [Doc 50, p. 2, Doc 50-1, 50-2, 50-3 and 50-4].

(b)   In August 2018, the Debtor-Defendants incurred additional undisclosed debt with SunTrust Bank [Doc 50, p. 3].

(c)   In November 2018, the Debtor-Defendants ceased payments as instructed by the McIntrye Defendants [Doc 50, p. 3] The Motion to Dismiss [Doc 42] did not address those allegation in the Second Amended Complaint, also

detailed in Plaintiff's Affidavit [Doc 50, p. 3, Doc 50-6, p. 2, ¶ 6-8] Nor did the McIntyre Affidavit address that allegation [Doc 42-2, p. 3, ¶ 8]  which states Plaintiff alleged the McIntyre Firm 'counseled' the Debtor Defendants]

(d)     Plaintiff confirmed the stop payment instructions of the McIntyre Defendants, specifically from Richard McIntyre [Doc 50, p. 4, ¶ 14; Doc 50-6, p. 3, ¶ 7-8]. The affidavit of the McIntyre Firm denies the McIntyre Firm told the Debtor-Defendants to stop payments or breach the contract [Doc 42-2, p. 4, ¶ 19]. Richard McIntyre did not provide an affidavit.

(e)     The McIntyre Defendants only relate that their clients told them they could not afford the loan payments as of October 2018 [Doc 42-2, ¶ 17].

(f)     The McIntyre Defendants claimed the French parent company of the Debtor-Defendants was terminating their distribution contract as of October 2018, which would end in January 2019, which the McIntrye Defendants would supposedly renegotiate [Doc 50, p. 4, ¶ 15, Doc 50-6, p. 3, ¶ 7-8].

(g)     The McIntyre Defendants introduced a letter from the law firm from the French parent company to evidence the intended future cancellation of that contract, supposedly received by Richard McIntyre, who again never signed an affidavit, provided by another attorney [Doc 42-2, p. 2 ¶ 8] The letter was hearsay.

(h)     Plaintiff's counsel contacted the law firm for the French Distributor in August 2020, seeking its (a) correspondence with the Debtors since May 2018 to the alleged cancellation of the distributor agreement and (b) correspondence with the McIntyre Defendants. The law firm refused to release any information, without the consent of Embryolisse, even after being advised that Embryolisse no longer existed and could provide no such consent.

(i)     Plaintiff and its counsel alleged there were no claims or suits involving the French parent company in the bankruptcy schedules of the Kost Defendant, particularly as those schedules disclosed nothing of the alleged distribution contract between them and the French parent [Doc 50, p. 14]

(j)     Plaintiff alleged a variety of torts by the McIntyre Defendants in the Second Amended Complaint [Doc 36] such as fraudulent transfers and related relief [Count III: SAC ¶ 71-79]  breach of fiduciary duty, aiding and abetting [Count IV: SAC ¶ 80-87], attorney's fees/costs. [Count V: SAC ¶ 88-91] which are briefed [Doc 14-22; Doc 50, p. 19-25] but only under Georgia law. However, "[F]or over 100 years, the state of Georgia has followed the doctrine of lex loci delicti in tort cases, pursuant to which 'a tort action is governed by the substantive law of the state where the tort was committed.' " ***Bullard v. MRA Holding***, 292 Ga. 748, 750 (1) (740 SE2d 622) (2013) (quoting ***Dowis v. Mud***

*Slingers*, 279 Ga. 808, 809 (621 SE2d 413) (2005)). The place where the tort was committed, or, the locus delicti, is the place where the injury sustained was suffered rather than the place where the act was committed, or, as it is sometimes more generally put, it is the place where the last event necessary to make an actor liable for an alleged tort takes place. ***Id*** at 750-71. ***Auld v. Forbes***, 309 Ga. 893, 894, 848 S.E.2d 876, 879 (Ga. 2020) Here, the stop-payment occurred in Florida, requiring application of Florida law on the merits, meaning the matter should have been transferred to Florida, not dismissed. As the Court held:

> "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." As a result, the Court must now decide whether to dismiss this action or transfer it to the appropriate venue. The Court concludes that a transfer to the District of New Jersey is appropriate. The Defendant is a resident of New Jersey. And, as noted above, a substantial part of the events or omissions giving rise to the claim occurred in New Jersey. Finally, the Court finds that the principles of judicial economy are best served by a transfer to the District of New Jersey. As a result, the Court finds that — pursuant to 28 U.S.C. § 1406(a) — the present action should be transferred to the District of New Jersey. ***Avent v. Pirrello***, 2017 U.S. Dist. LEXIS 39953, *13, 2017 WL 1062372 (D. NJ 2017) [Hon. Thomas Thrash transferred case to New Jersey per lack of personal jurisdiction]

(k)     For example, a Florida federal court declined to dismiss a Florida claim for tortious interference of a law firm with a contract, as non-stranger to the contract allegedly acting in bad faith under Florida law. ***Wyndham Vacation***

***Ownership, Inc. v. US Consumer Attorneys, P.A***., LEXIS 226576, *34-35  (M.D. Fla. 2019)  ("[While non-strangers generally have a 'privilege to interfere' with the business relationship to protect their own economic interests, they may still be liable for tortious interference if they did so in bad faith [cit. omitted] "Although an agent generally cannot be held liable for tortiously interfering with the contract of its principal, an agent's "privilege to interfere" is not absolute."). "[A]ctions alleging tortious interference for an improper purpose, as opposed to cases in which no assertion of impropriety is made…..Such a determination…is generally reserved for the trier of fact.". The "privilege" defense is not dispositive at the motion to dismiss stage of the proceedings. ***Wilson v. Everbank, N.A***., 77 F. Supp. 3d 1202, 1239 (S.D. Fla. 2015) ["Because the assertion of a privilege to interfere in an otherwise protected business relationship is an affirmative defense, this privilege argument…is unavailing on a motion to dismiss"]. The McIntyre Defendants only claim their actions privileged under Georgia law, not Florida law. [See ***Diamond Resorts Int'l, Inc. v. Aaronson***, 371 F. Supp. 3d 1088, 1113-1114 (M.D. Fla 2019) [issue existed as to agent's privilege to advise client to stop making payments to third party which was not in their best interests as they were sued, as were the Debtor-Defendants here after being advised to stop payments by the McIntyre Defendants, who have yet to provide evidence that their clients could

not make the payments or their motivation for stopping the payment a year before the bankruptcy,

(l)     The Court found the allegations of the Second Amended Complaint insufficient to confer Georgia personal jurisdiction as to the McIntrye Defendants, per their telephone calls forming the basis for the alleged tortious injuries [Doc 65, p. 11-12] in addition to finding no basis for personal jurisdiction in Georgia [Doc 65, p. 10-13]. The Court dismissed the claims without prejudice as to the McIntyre Defendants for lack of personal jurisdiction [Doc 65, p. 15] and ordered re-pleader of Plaintiff's shotgun claims against Embroylisse [Doc 65 p. 16] which Plaintiff dismissed as Embryolisse ceased to exist. The Court never reached the merits of Plaintiff's claims. ***Madara v. Hall***, 916 F.2d 1510, 1513-14 & n. 1 (11th Cir.1990). The Court could have transferred the case to the Middle District of Florida as requested by the McIntyre Defendants in the alternative but did not [Doc 42-1, p. 25-26] Accordingly, the claims may have merit under Florida law, meaning sanctions would not be appropriate, given they were dismissed without prejudice.

## II.    <u>Sanctions should not otherwise be imposed.</u>

Plaintiff's counsel apologies for the issues of timely filings and the motions to strike, who has not filed a new case in the Court since last year or a motion to strike in many months who is remedying these issues in the other unrelated cases below. Sanctions should not be imposed here as held in a similar case as to untimely and sanctionable motions in *limine*. ***Kaplan v. DaimlerChrysler, A.G***., 331 F.3d 1251, 1255-1257 (11th Cir, 2003) 11th Cir. 2001) as follows:

> "The purpose of Rule 11 sanctions is to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers." ***Massengale v. Ray***, 267 F.3d 1298, 1302 (11th Cir. 2001). Courts assess such sanctions, then

> "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading *in bad faith for an improper purpose*."

> "*Id*. at 1301 (quotes and cites omitted; emphasis added) ***Coker v. DaimlerChrysler Corp***., 220 F. Supp. 2d 1367, 1373 (N.D. Ga. 2002). The rule incorporates an objective standard. *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987). Hence, courts determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified. ***Riccard v. Prudential Ins***. *Co.,* 307 F.3d 1277, 1294 (11th Cir. 2002). We review Rule 11 sanctions under the abuse-of-discretion standard. Id.; see also 5A WRIGHT & MILLER: FEDERAL PRAC. & PROC. § 1337 (*Procedural Aspects of Rule 11 Motions; Due Process*) (Supp. 2002). *HN4 Court-initiated* sanctions under Rule 11(c)(1)(B) do not involve the "safe harbor" provision contained in Rule 11(c)(1)(A). ***In re Pennie & Edmonds LLP***, 323 F.3d 86, 89 (2d Cir. 2003). That

11

provision ordinarily gives a lawyer or litigant 21 days within which to correct or withdraw the challenged submission. *Id.* at 89.

Because "no 'safe harbor' opportunity exists to withdraw or correct a submission challenged in a court-initiated proceeding," *id.,* **Rule 11**'s drafters commented on **Rule 11**(c)(1)(B)'s compensating protections: The initiating court must employ (1) a "show-cause" order to provide notice and an opportunity to be heard; and (2) a higher standard ("akin to contempt") than in the case of party-initiated sanctions.

"Other circuits apply the "akin to contempt" rationale to court-initiated, Rule 11 sanctions. ***Hunter v. Earthgrains Co. Bakery***, 281 F.3d 144, 151 (4th Cir. 2002); *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998). Sua sponte Rule 11 sanctions, then, must be reviewed with "particular stringency." ***Pennie***, 323 F.3d at 90; ***MHC Inv. Co. v. Racom Corp***., 323 F.3d 620, 623 (8th Cir. 2003); ***Hunter***, 281 F.3d at 153; ***United National Insurance Co. v. R & D Latex Corp***., 242 F.3d 1102, 1115 (9th Cir. 2001).

"While we join those circuits in their "akin-to-contempt" interpretation, three reasons excuse us from resolving the related "*mens rea*" issue that split the ***Pennie*** panel. First, the judge himself intimated, at the pretrial conference, that he would not vigorously enforce the time limits for filing *in limine* motions. While DC violated the spirit of his "just so long as it's in sufficient time" reminder, the court's own actions in ruling on all nineteen motions by the start of trial demonstrates that DC in fact did file the motions in sufficient time, at least in the literal sense.

"<u>No doubt those late filings irritated and inconvenienced both the court and plaintiffs' counsel, but seven were moot and thus consumed an inconsequential amount of the court's time, while the remainder could have simply been denied as untimely, if not carried with the case and decided via contemporaneous objection at trial. DC's actions were abusive, but not "over the top," much less akin to contempt.</u>

"Second, judges can discourage such practices through more stringent rule enforcement *beforehand*, but that is not what the judge signaled here (not one of his orders cite M.D.FLA.LOC.R. 3.01(g), which is

aimed at getting parties to confer and work out their differences before filing motions not otherwise excepted by that rule; nor did plaintiffs honor it).

"Third, Nazi-era memories (and for some, lingering anger and resentment) continue to pervade our nation's mind-set. Americans forgive, but don't forget. *See **In re Austrian and German Bank Holocaust Litig.**,* WL 402795 (S.D.N.Y. 2/21/03) (unpublished); ***In re Nazi Era Cases Against German Defendants Litig*.**, 213 F. Supp. 2d 439 (D.N.J. 2002), cited in B. Neuborne, *Preliminary Reflections on Aspects of Holocaust-era Litigation in American Courts*, 80 WASH.U.L.Q. 795, 834 (2002).

"While DC's "Nazi" motion may have been overkill, it simply cannot be said to meet the contempt-of-court level standard set forth above. It was not outlandish for DC to suppose, in this high-dollar case, that plaintiffs' counsel might subtly if not overtly prey on juror biases. DC also complains that the district court failed to enter a show cause order and otherwise comply with Rule 11's formal requirements. While formal compliance with Rule 11(c)(1)(B) is the ideal, see ***Bass v. E.I. Dupont de Nemours & Co***., 324 F.3d 761, 767-68 (4th Cir. 2003), we apply a flexible standard, Riccard, 307 F.3d at 1294 n. 14, so in many cases substantial compliance may suffice. *See **Precision Specialty Metals, Inc. v. United States***, 315 F.3d 1346, 1354 (Fed.Cir. 2003).
We need not say whether a written show cause order was required here because of the result we reach above on the "Nazi" motion, and because we agree with DC that there is a material variance between the court's oral Rule 11(c)(1)(B) notice (localizing the court's complaint to the "Nazi" motion) and the sanction imposed (encompassing non-"Nazi," *in limine* motions). Those procedural grounds alone warrant appellate relief.

## III. <u>CONCLUSION</u>

We therefore REVERSE the district court's Rule 11 order and REMAND this case. We direct the district court to refund the Rule 11 sanctions money that DC paid to the district court. In light

of this result, it is not necessary to reach the remainder of DC's arguments.

## III.   <u>The other Cases do not support Sanctions.</u>

Samples of other cases of Plaintiff and its counsel are shown below which concern high balance loans, that are mostly in default, often unresolved and do not have the perceived intent or effect that the Court believes. Each case is detailed as follows, including details not addressed in the prior Motion and the Order.

- NOTE: Each note and guaranty at issue is for a commercial business loan, such as the one at issue, with Georgia forum and choice of law clauses, with an optional arbitration clause, facts omitted in the prior Motion. Defense counsel has not appeared in any of these cases, has not represented any of these parties, who has no knowledge of any settlement discussions or transactions in each case.

- Plaintiff employs a promissory note with a security agreement and a guaranty to reflect its debts with small businesses, but often the business is shut down and its assets are disposed of, such as by other officers or members, even attorneys, requiring joinder of those additional parties.

- Plaintiff previously enforced the notes and guarantees at issue against other parties in Cobb State and Superior Court, as well as other states, without issue, since 2012.  Most of these judgments remain unpaid.

- Plaintiff has not filed new actions in the Court since last October. These are just some of many examples.

- ***IOU Central v. Johns Baylobsters et al,*** Case No. 1:19-cv-04595-TWT: suit on business note, guaranteed by its officers who ceased loan payments, whose Ohio attorneys contacted Plaintiff in Georgia, stating their clients (1) closed their business (2) lacked assets to repay

the loan (3) could not afford to repay the loan. Those contentions were untrue as this business still operates of which the Court is requested to take notice as detailed in Plaintiff's dismissal in that case. These contentions are nearly identical to those in the instant case. Plaintiff filed an amended complaint dropping Ohio counsel from that case, who raised a defense of personal jurisdiction through malpractice firm, but Plaintiff could not implement jurisdictional discovery for that defense and the filing deadline was missed as Defaults were entered against the other parties in this case. Plaintiff dismissed the case to address the matter against the successor business in Ohio and continues to attempt resolution of the matter. This case is unresolved.

- *__IOU v. Intercom Inc., et al__,* Case No 19-cv-04595-TWT: suit on claims related to a note for $216,000.00 by a business, guaranteed by its officer, who, with his spouse, was alleged to have fraudulently transferred their property to a third party, to avoid Plaintiff's loan from which they benefitted. Plaintiff filed suit as to the business, guarantor, spouse and third party based upon the note, guaranty and legal theories. The third party raised a personal jurisdiction defense. Plaintiff filed an amended complaint dropping the third party to focus upon the debt. The business and guarantor bankrupted and default was entered as to the spouse. The fraudulent transfer was established and settled I the guarantor's Chapter 7 bankruptcy including the spouse's purchase of a second property in Colorado, as detailed in Plaintiff's dismissal of that case, done so a related Colorado case could proceed. Plaintiff dismissed the case after moving to transfer the case to Colorado to address those issues.  This case is not settled.

- *__IOU v. D'Agustino et al, 1:20-cv-02169-WMR__*: suit on claims related to business note, guaranteed by two of its officers in which a spouse was also involved, with their bankruptcy attorney. The attorney also communicated with Plaintiff regarding the alleged insolvency of this business. These parties put the business in successive, bad-faith Chapter 11 bankruptcies, dismissed with prejudice, Conn. Bankr. Case. No. 14-21042, filed 5/29/14, dismissed with prejudice on 6/16/15 for 90-days per their bad-faith failure to provide a confirmable Chapter 11 Plan with dismissal of the case after Trustee sought its

Chapter 7 conversion and in D. Conn. Bankr Case No. 18-20362, filed 3/16/18, dismissed with prejudice on 8/5/19 for a year, again per the bad-faith failure of Defendants to provide a confirmable Chapter 11 Plan and its dismissal of the case after Trustee sought its Chapter 7 conversion of  which the Court is also requested to take judicial notice. This case was refiled from ***IOU v. Atlantic Mechanical***, **Case** No. 1:20-cv-00265-MHC in **which** IOU and its counsel did miss a deadline to file a scheduling report and was dismissed without prejudice IOU then re-filed and diligently prosecuted this case, which was settled just prior to a hearing on its pending Motions.

- ***IOU v. Mason et al***, **Case No. 1:19-cv-04202-LMM**, suit on claims related to a note for $80,000.00 and a 2016 state court judgment as to the principal borrower and guarantor. Absent discovery, Plaintiff provided a fourth amended complaint [Doc 94] sufficiently detailed to outline numerous issues regarding fraudulent transfers of property and related relief as to Defendants, which was not found to be a shotgun complaint [Doc 5, p. 4]  Many of the Defendants were defaulted even after multiple extensions of time to respond to the suit. The attorney for most of the defendants only withdrew after two months of litigation involving two motions to dismiss.  This case was ultimately settled although Plaintiff can disclose further information about if permitted to do so under seal.

- The Court notes the Order in this case which states Plaintiff's counsel had an unusually large number of discovery issues and ethical disputes before this judge [Doc 66, p. 6]. However, Plaintiff's counsel had two other cases before this Judge, both stayed, one in which Plaintiff had to defend a meritless Rule 11 motion that was denied and the other concerned discovery disputes between the parties [Luxe] and stayed for arbitration which Plaintiff is now having to reopen as the opposing party will not arbitrate.

- Plaintiff's counsel had not prosecuted a discovery motion in this Court since being admitted in 2004 until filing one last year. Plaintiff's counsel had not prosecuted a motion to strike until last year.

Plaintiff's counsel has never prosecuted or defended a motion for sanctions in this Court until the instant one.

- The Court noted many instances where Plaintiff's counsel missed deadlines under Local Rules. [Doc 66, p. 5] By way of explanation, Plaintiff's counsel was impacted in large part to COVID-19 as his paralegal was laid off from March 2020 until late July 2020 and had to work on cases alone. Plaintiff's counsel also has received vastly increased large volume of emailed court notices and other notices due to COVID-19. This larger volume resulting in court related matters being diverted to his spam folder. The spam folder was an issue in a 1:20-cv-03910-SDG case where Plaintiff obtained an entry of default against a represented party and called to find out that defense counsel was negatively impacted. Plaintiff's counsel did not seek a final judgment and instead dismissed the case to otherwise resolve it. ***IOU v. Shean Harrington***. 1:20-cv-03910-SDG Plaintiff's counsel also notes that the Court provides a relatively short 14-day response time for motions, aside from those for summary judgment, which can and are often 25-pages in length. See N.D. Ga. L.R. 7.1. By comparison, some courts have 21-day response period for motions, which would also coincide with the 21-day period to file an amended complaint as a matter of right under Fed. R. Civ. P. 15. See M.D. Ga. L.R. 7.2. See M.D. Fla. 3.01. Plaintiff's counsel has considered a comment seeking a change this Rule but does not know to whom he should direct it. Again, this is an observation, *not* an excuse as counsel should be prepared to respond to motions under the Local Rules.

- Relatively few of Plaintiff's cases in the Court settle particularly since COVID-19, such as 'nuisance value settlements from non-resident third parties' [Doc 66, p. 7]. Often, a borrower or guarantor borrows Plaintiff's funds, typically advanced for a loan over $120,000.00, ceases payments just after obtaining the funds and ceases communications with Plaintiff to resolve the matter. Plaintiff resolves most of its loan defaults outside of court, including many matters negotiated by Plaintiff's counsel. Most matters are satisfactorily settled outside court, which far exceed cases in the Court. Plaintiff and its counsel only resort to costly, time-consuming litigation after

informal communications fail, not to bully debtors or third parties, as shown by the dates of the loans at issue. Typically, nobody appears in Plaintiff's cases and assets are sold or transferred and businesses are closed and reopened in a new name by the time a judgment is reached.

- ***IOU v. Big State et al,*** Case No 1:20-cv-000200-MHC, suit on claims related to a note for $81,000.00 by a business, a refinance of multiple prior loans, guaranteed by its main owner, but for which his spouse had repeatedly applies and other businesses are alleged to be involved. These loan payments ended long before suit. After a year of efforts to resolve the debt, Plaintiff filed suit and amended its complaint, including a claim of joint liability under a theory of breach of fiduciary duty. Defense counsel refiled his original, moot motion to dismiss against the amended complaint, which the Court granted, contrary to the forum clauses in the Note and Guaranty. Plaintiff appealed the decision to the Eleventh Circuit, where the case remains pending. The appeal also concerns the issue of the forum clause in the Note and Guaranty which the Cobb State court has upheld for years. This case is unresolved, even after mediation.

- ***IOU v. Best Restorations et al,*** Case No. 1:19-cv-05416-MHC, Suit on claims for a business note and security agreement, guaranteed by its officer in which third party was allegedly involved, on issues that began long before suit. The individual defendants invoked arbitration under the note and guaranty and the case was stayed for arbitration. Plaintiff moved to reopen the case as the arbitration was not conducted and the business dissolved with other creditors obtaining judgments against defendants. The case is unresolved.

- ***IOU v. Straightline et al,*** Case No. 1:19-cv-04749-SDG; Suit on claims related to business note and security agreement, guaranteed by officer in which his spouse is allegedly involved. Loan payments ceased long before suit. Plaintiff promptly filed suit, perfected service, obtained entries of default and moved for default judgment, which was denied as the Court ordered Plaintiff to replead the complaint from a shotgun complaint. Plaintiff's counsel immediately complied by simplifying the allegations in an amended complaint. Plaintiff

moved to transfer the case, as the business was dissolved and further claims could be best addressed in the other forum.

- ***IOU v. Genuine Property et al,*** 1:20-cv-00213-LMM, suit on claims related to note for $88,000.00, by business guaranteed by officer for which Plaintiff negotiated a debt settlement with their South Carolina counsel who contacted IOU in Georgia, like the prior cases. This case was filed after default on the settlement, after which Business and guarantor each filed bankruptcy through their counsel South Carolina Case Nos. 3:2020-bk-00188 and 00961. The court granted leave to amend, but under conditions different than those sought by Plaitiff The case was dismissed for lack of activity months later. IOU had not pursued the case in Georgia given the multiple bankruptcy issues. There was no finding made regarding IOU's pleadings.

- ***IOU v. Krychev et al,*** Case No. 1:20-cv-02675-MHC. Suit on claims related to note for $100,000.00, by CSA Nutrition, guaranteed by an individual who bankrupted, of with two other officers. Plaintiff filed suit and obtained a default judgment against the three current defendants, for judgment on the note as to the business and a finding of liability for damages as to the other officers, one an attorney for breach of their fiduciary duty as officers of CSA in misusing and disposing of its property and assets, as well as a default judgment in quantum meruit for the amount of the loan, as well as finding of attorney's fees. The Court otherwise denied default judgment against the defendants. IOU moved for reconsideration of that order, which those defendants moved to vacate, after 9 months of silence after service of the suit.

- ***IOU v. MP Copiers, et al***, Case No. 1:20-cv-02835-CC – dismissed as not served – no opinion made.

- ***IOU v. Benz et al, Case No. 1:20-cv-02863-CC***, this is a contested suit that details another business purchased the company that borrowed money from Plaintiff, but assumed it, which was detailed in the Amended Complaint, which Plaintiff's counsel granted many extensions as did opposing counsel.

19

- ***IOU v. Metal Specialists***, Case No. 3:20-cv-00014-TCB: the Court is requested to take judicial notice of the current amended complaint in that case which reflects the current standard of Plaintiff's pleadings.

- ***IOU v. Vinyl Works et al***, Case No. 1:20-cv01272-WMR: filed 3/23/20 to enforce a loan for 102,120.00. Plaintiff was ordered to file returns by 6/22/20 [the case had been served] and voluntarily dismissed the case on 6/23/20, which was resolved at that time.

## CONCLUSION

Sanctions should not be imposed given these circumstances, as the McIntrye Defendants were dismissed without prejudice and sanctions would preclude litigating the merits of this action in a proper forum. The other cases are being resolved or addressed. Plaintiff and its counsel pray that the Show Cause Order be discharged and all other just relief.

## CERTIFICATE OF COMPLIANCE

Per L.R. 5.1(C), I certify this document was prepared per L.R. 5.1(B) in Times Roman 14-point typeface.,

## CERTIFICATE OF SERVICE

I certify a precise copy of this document was filed ECF on the below date sending notice to counsel of record.

Respectfully submitted this 16th day of April 2021.

By:   */s/Paul G. Wersant*
        Paul G. Wersant
        Georgia Bar No. 748341
        3245 Peachtree Parkway, Suite D-245
        Suwanee, Georgia 30024
        Telephone: (678) 894-5876
        Email: pwersant@gmail.com
        Attorney for Plaintiff
        File No. 106412